OPINION
{¶ 1} Plaintiff-appellant, Donald Fitch, is appealing from the summary judgment granted against him in the Franklin County Court of Common Pleas. Appellant assigns three errors for our consideration:
 [I.] THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFF-APPELLANT IN DENYING *Page 2 
PLAINTIFF-APPELLANT'S MOTION TO STRIKE THE AFFIDAVIT OF WAYNE ANDREW GUTHRIE, AND IN GRANTING THE DEFENDANTS-APPELLEES' MOTIONS FOR SUMMARY JUDGMENT BASED UPON THAT AFFIDAVIT.
 [II.] THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFF-APPELLANT IN REFUSING TO CONSIDER EVIDENCE THAT AN AGENT OF THE DEFENDANTS-APPELLEES HAD KNOWLEDGE OF THE UNSAFE CONDITION OF THE DOOR.
 [III.] THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFF-APPELLANT IN DENYING PLAINTIFF-APPELLANT'S MOTION TO AMEND THE CASE SCHEDULE TO EXTEND THE DISCOVERY CUT-OFF DATE, AND TO CONTINUE THE HEARING OF THE DEFENDANT'S-APPELLEES' MOTIONS FOR SUMMARY JUDGMENT TO ALLOW PLAINTIFF-APPELLANT TO DEPOSE WAYNE ANDREW GUTHRIE TO DEMONSTRATE THAT HE LACKED PERSONAL KNOWLEDGE OF THE MATTERS SET FORTH IN HIS AFFIDAVIT.
 {¶ 2} The first assignment of error has two parts. The first part centers on the trial court's consideration of an affidavit of Wayne Andrew Guthrie on the subject of whether the property manager of the building where appellant was injured, defendant-appellee, C.B. Richard Ellis ("CBRE") and the company which provided engineering services, defendant-appellee, Building Technology Engineer of North America, LLC ("BTENA") knew of a dangerous condition in the building. The second part of the assignment of error addresses whether the granting of summary judgment against appellant was appropriate.
 {¶ 3} Affidavits in support of motions for summary judgment are governed by Civ.R. 56(E), which requires "[supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and *Page 3 
shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. * * * The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."
 {¶ 4} Civ.R. 56(E) must be read in conjunction with Evid.R. 602, "Lack of Personal Knowledge," which reads:
 A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.
 {¶ 5} The affidavit of Wayne Andrew Guthrie begins by setting forth his history of employment at 150 East Gay Street, the building where appellant was injured. Mr. Guthrie was "chief engineer" from 1999 until October 2004, obviously including the June 19, 2001 date when appellant was injured. Prior to serving as chief engineer, he was a service technician, beginning in 1995. This portion of the affidavit obviously establishes that Mr. Guthrie has at least some personal knowledge of the building.
 {¶ 6} Mr. Guthrie also testified that the revolving doors which injured appellant were installed in 1996 by the manufacturer of the doors. He would clearly have been in a position to have personal knowledge of these facts.
 {¶ 7} However, the affidavit then deviates from facts where personal knowledge was demonstrated. Mr. Guthrie swears "to the best of my knowledge" about the process used by the manufacturer to install the doors and supposedly secure a metal plate which fell from the doors onto appellant. The chief engineer of an office building would not be expected to stand around and watch the entire time new revolving doors were being *Page 4 
installed in the building. Mr. Guthrie's affidavit may well reflect his understanding of what occurred in the installation process, but his understanding is not the same as personal knowledge for purposes of Civ.R. 56(E) and Evid.R. 602.
 {¶ 8} Even more problematic is paragraph four of Mr. Guthrie's affidavit, which reads:
 The condition of the horizontal door panel which fell on Plaintiff on June 19, 2001, was the same as when the manufacturer installed the door (including the aluminum panels) in 1996. The maintenance technicians and/or contractors under my supervision did not install or re-affix the panel at any time between 1996 and June 19, 2001. Regular, routine inspections of the door performed by vendors, maintenance staff, and security guards did not indicate any problems with the condition or security of the horizontal panels prior to June 19, 2001.
 {¶ 9} This paragraph does not demonstrate Mr. Guthrie's presence for any of the alleged inspections. The paragraph also does not demonstrate a basis for claiming that no maintenance personnel or contractors fixed or re-secured the panel which fell on appellant. Obviously, Mr. Guthrie did not stand and watch the revolving door 24 hours a day, seven days a week. He simply was not in a position to say what happened when he was out of the building or performing his employment tasks in other areas of the building.
 {¶ 10} This paragraph of the affidavit also conflicts with appellant's testimony in his deposition that security personnel who were in a position to actually have personal knowledge told him that the door panel which fell and injured appellant had fallen on a number of other occasions in recent history.
 {¶ 11} Given the problems with Mr. Guthrie's affidavit, and the conflicting deposition testimony of appellant, summary judgment was not appropriate based upon *Page 5 
that affidavit. The affidavit was the basis for the summary judgment granted. The deposition of Mr. Guthrie references work done by a vendor on the revolving doors both before and after the piece fell on appellant. Security duties following 9-11 required that the revolving doors be collapsed so people could evacuate the building through a double opening, rather than proceed single file through a revolving door. Following this, the wings of the revolving doors were loose and required tightening. The door company which had the contract for the revolving doors came out to try and tighten portions of the revolving door. Mr. Guthrie knew that Pad Door did work on the door as a whole, but did not know whether or not the particular wing of the door which contained the piece which fell on appellant received maintenance work at that time.
 {¶ 12} Given the state of the information about the maintenance of the door, the trial court did not have a basis for granting summary judgment.
 {¶ 13} The first assignment of error is sustained.
 {¶ 14} As mentioned above, appellant testified during his deposition that security personnel from the building informed him that the piece of the revolving door which fell on him had fallen before, as recently as the same day appellant was injured. The trial court refused to consider these statements on the theory the statements were inadmissible hearsay. Counsel for appellant has argued that the statements were subject to a hearsay exception contained in Evid.R. 801(D)(2), which reads:
 Statements which are not hearsay. A statement is not hearsay if:
 * * *
 Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of *Page 6 
which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.
 {¶ 15} The trial court rejected consideration of these statements based upon the fact that the security personnel, although performing services at the building, were actually employed by a separate security firm under contract to CBRE. Counsel for appellant argued the security personnel were agents or servants of CBRE and BTENA by virtue of the contract with CBRE to perform services at the building, including the service of reporting maintenance problems to CBRE and BTENA. The deposition of Mr. Guthrie establishes that Allied Security had the contract to provide security services at 150 East Gay Street. Personnel with Allied Security were expected to secure the revolving doors at the end of the day and to check the doors at that time. As a result, inspection of the doors was not part of the maintenance rounds which were conducted by personnel under Mr. Guthrie's supervision as chief engineering supervisor for the building. If a problem with the doors came to the attention of the security personnel, security personnel were required to generate a work order to remedy the problem.
 {¶ 16} Under the circumstances, security personnel, although under a separate contract with Allied Security, worked as agents of CBRE and BTENA with respect to maintenance duties at 150 East Gay Street, especially with respect to the inspection and maintenance of the revolving doors. Statements regarding the maintenance and inspection of the revolving doors were statements of agents for purpose of Evid.R. *Page 7 
801(D)(2) and should have been considered in ruling on the motion for summary judgment.
 {¶ 17} Mr. Guthrie's deposition and the deposition of Grace Elizabeth Benson both indicate that there was a security officer known as Ingrid who had a heavy German accent and who matched the description given by appellant as to the security officer who told him that the piece which fell and hit him had fallen on other occasions, including earlier that day. The trial court's analysis of the proof that Ingrid was an employee of Allied Security does not reflect the standard which is to be employed in conjunction with summary judgment motions, namely that the facts are to be construed liberally in favor of the party defending against the summary judgment motions.
 {¶ 18} The second assignment of error is sustained.
 {¶ 19} In light of our ruling in the first assignment of error, the third assignment of error is moot.
 {¶ 20} In summary, we sustain the first and second assignments of error. We find the resolution of the first assignment of error renders the third assignment of error moot. As a result, we reverse the judgment of the Franklin County Court of Common Pleas and remand the case for further appropriate proceedings.
Judgment reversed and remanded for further proceedings.
WHITESIDE, J., concurs.
SADLER, P.J., concurs separately.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 8